UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------X

CHARLES DARNEY,                          :        DECLARATION OF EDWARD S. ZAS

             Petitioner,          :        13 Civ. __ (LTS)

       -v.-                              :        [Related to: 11 Cr. 971 (LTS)]

UNITED STATES OF AMERICA,         :

           Respondent.         :

---------------------------------------------------X

**EDWARD S. ZAS** declares under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1. I am an attorney with the Federal Defenders of New York, Inc., counsel to Petitioner Charles Darney. I make this declaration in support of Mr. Darney's motion under 28 U.S.C. § 2255 for an order vacating, setting aside, or correcting the 24-month prison sentence imposed by this Court on April 16, 2013, resentencing him to a 16-month prison term, and granting any other appropriate relief. The government consents to resentencing, but defers to the Court as to what the new sentence should be. The government also has agreed not to seek enforcement of the waiver provision in Mr. Darney's plea agreement restricting his ability to file a § 2255 motion.

2. This declaration is based upon my personal knowledge, my review of documents in the record, my communications with Assistant United States Attorney Rahul Mukhi, and information I obtained from Glen Johnson, Mr. Darney's New York State parole officer.

## Background

3. Mr. Darney was originally arrested in this case by state officials on September 3, 2011. On October 4, 2012, after being transferred into federal custody, he pled guilty in this Court to a

superseding felony Information that charged him with one count of using a telephone to facilitate the distribution of "crack" cocaine, in violation of 21 U.S.C. § 841(a)(1).

4. Sentence was imposed on April 16, 2013. A copy of the sentencing transcript ("Tr.") is annexed to this declaration as Exhibit "A." At sentencing, one of the issues that concerned the Court was whether Mr. Darney had been sentenced by New York State following his September 3, 2011 arrest and, relatedly, whether he would receive credit toward his federal sentence for the entire period he had spent in custody since September 3, 2011. *See, e.g.*, Tr. 3-4, 11-15, 16-18, 26.

5. The Presentence Investigation Report ("PSR") specifically advised the Court that, according to Mr. Darney's New York State parole officer, the Division of Parole "does not plan to file a violation report as a result of Darney's September 3, 2011, arrest because his parole conditions had not been served until May 3, 2012." PSR. ¶ 34. Neither the Court nor the parties questioned the accuracy of this information.

6. Relying on the information contained in the PSR., this Court imposed a 24-month prison term, the bottom of the applicable 24-to-30 month Guidelines range. In selecting this sentence, the Court expressly noted its assumption, which the parties shared, that Mr. Darney would receive credit towards his federal sentence for all of the time he had spent in custody since his arrest on September 3, 2011. *See* Tr. 26.

**Reasons for Court Action**

7. Parole Officer Johnson has advised me that, contrary to the Court's understanding, and contrary to the statements in the PSR., when Mr. Darney was sentenced by this Court on April 16, 2013, he had already been sentenced by state officials (on or about October 27, 2011) to an eight-

month prison term for having violated the conditions of his state parole. This term of imprisonment was completed on May 3, 2012 (with credit from September 3, 2011).

8. Since this eight-month period in custody was credited towards Mr. Darney's state parole-violation sentence, the BOP will not credit it towards his 24-month federal prison sentence, notwithstanding this Court's recommendation that Mr. Darney receive federal credit from September 3, 2011. *See* Exhibit "B" to this declaration (indicating Mr. Darney's projected release date as February 6, 2014); 18 U.S.C. § 3585(b) (defendant may not receive credit for time spent in official detention if that time has been "credited against another sentence"). In other words, though the Court and the parties believed at sentencing that Mr. Darney would receive credit toward his federal sentence for time in custody since September 3, 2011, that is not the case. In fact, Mr. Darney is not receiving federal credit for any of the time he spent in custody prior to May 3, 2012.

9. As discussed more fully in the accompanying memorandum of law, because this Court's sentence was based in part on inaccurate material information, it was imposed in violation of due process. The Court therefore has the power to correct the sentence under 28 U.S.C. § 2255.

10. Given the Court's reliance on the false information contained in the PSR., and the Court's reasonable but mistaken assumption that Mr. Darney would receive credit toward his 24-month federal prison term for the time he spent in custody since September 3, 2011, and the unfairness that would otherwise result, Petitioner requests that the Court vacate, set aside, or correct his 24-month sentence and resentence him to 16 months in custody, or to time served, whichever results in his release sooner. The other terms of the sentence would remain unchanged.

**WHEREFORE**, it is respectfully requested that the Court grant Mr. Darney's motion under 28 U.S.C. § 2255 to correct, set aside, or vacate his 24-month sentence, resentence him to 16 months in prison, and grant any other relief that may be appropriate.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  New York, New York
        October 24, 2013

_____
EDWARD S. ZAS

# Exhibit A

D4ocdarns

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA

4              v.                           11 Cr. 971 (LTS)

5   CHARLES DARNEY,
                                            Sentence
6                  Defendant.

7   ------------------------------x

8                                           New York, N.Y.
                                            April 16, 2013
9                                           2:10 p.m.

10  Before:

11          HON. LAURA TAYLOR SWAIN

12                                          District Judge

13

14          APPEARANCES

15

16  PREET BHARARA
         United States Attorney for the
         Southern District of New York
17  RAHMUL MUKHI
         Assistant United States Attorney
18

19  FEDERAL DEFENDERS OF NEW YORK, INC.
         Attorneys for Defendant
20  BY:  SABRINA SHROFF

21

22

23

24

25

```
 1              (Case called)

 2              MR. MUKHI:  Rahmul Mukhi for the United States.  Good

 3   afternoon.

 4              THE COURT:  Good afternoon, Mr. Mukhi.

 5              MS. SHROFF:  Good afternoon, your Honor.  For Mr.

 6   Darney, Sabrina Shroff from the Federal Defenders office.  With

 7   the Court's permission, also present at our table is Ms. Leice,

 8   a social worker who has been working with Mr. Darney.

 9              THE COURT:  Good afternoon, Ms. Shroff, Ms. Leice, and

10   Mr. Darney.

11              We are here today for sentencing.  I have received and

12   reviewed the pre-sentence investigation report which is dated

13   January 14, 2013, including the recommendation and addendum, as

14   well as a letter dated April 2, 2013, from defense counsel,

15   which was accompanied by letters from Mr. Darney and his mother

16   and a copy of the reentry plan that has been established for

17   Mr. Darney.

18              Are there any other written submissions that the

19   parties intend me to have considered in connection with the

20   sentencing?

21              MR. MUKHI:  None from the government, your Honor.

22              MS. SHROFF:  Not from us, your Honor.

23              THE COURT:  Ms. Shroff, have you read the pre-sentence

24   report and discussed it with Mr. Darney?

25              MS. SHROFF:  Yes, your Honor.
```

```
 1              THE COURT:  Mr. Darney, have you yourself reviewed the
 2    pre-sentence report?
 3              THE DEFENDANT:  Yes, your Honor.
 4              THE COURT:  Have you discussed it with Ms. Shroff?
 5              THE DEFENDANT:  Yes, your Honor.
 6              THE COURT:  Ms. Shroff, do you have any objections or
 7    other issues with respect to the content of the report that you
 8    want to address at this time?
 9              MS. SHROFF:  Your Honor, setting aside the
10    justification section, no.
11              THE COURT:  We'll get to sentencing issues in a bit.
12              Mr. Mukhi, does the government have any objections or
13    other issues with respect to the content of the report?
14              MR. MUKHI:  No, your Honor.
15              THE COURT:  The offense level is 10, so we don't have
16    the third point issue here?
17              MR. MUKHI:  Correct, your Honor.
18              THE COURT:  Am I correct in understanding that there
19    is no state charge associated with the September 2011 arrest?
20    The pre-sentence report characterizes it as an arrest in
21    connection with the federal charge and then a transfer to BOP
22    custody.  One reason I'm asking this is to see if we have a
23    common understanding as to how far back the BOP will count in
24    calculating the sentence.
25              MR. MUKHI:  Your Honor, my understanding is there was
```

1  a state charge that was pending.  A federal indictment was

2  brought later that covered the same conduct and that state

3  charge is still pending.

4        THE COURT:  What I was looking at was paragraphs 33

5  and 34 of the PSR.  Paragraph 33 says Darney was arrested for

6  the instant federal offense on September 3, 2011.  Paragraph 34

7  says the state division of control doesn't intend to violate

8  Mr. Darney, but it doesn't say anything about a state charge.

9  Ms. Shroff, do you know anything about it?

10        MS. SHROFF:  Your Honor, I checked what is on the

11  state website.  The state website does not show this case as

12  pending.  I'm almost positive that because he was writted here

13  and the writ was satisfied, there is not a standing request for

14  my client in state court.  And it is the normal procedure for

15  the state court case to be dismissed.

16        MR. MUKHI:  That may be correct, your Honor.  I

17  believe it was pending at the time that the federal indictment

18  was issued, although I just don't recall if after that point

19  the state charge was dismissed.

20        THE COURT:  Ms. Shroff says she doesn't see it on the

21  state records of pending charges.  And as far as we know, there

22  is no state detainer?

23        MR. MUKHI:  Correct, your Honor.

24        MS. SHROFF:  Your Honor, I think once the federal

25  government moves on the same conduct, the policy, at least from

1    the government's point of view, if they are proceeding, it

2    would be because the state allowed them to proceed.  This is

3    basically in the lingo what is called a narco lock.

4              THE COURT:  That's my general understanding without

5    being completely conversant in the lingo.

6              MR. MUKHI:  That is correct, your Honor.  That is the

7    usual practice.  I just don't recall whether I had a specific

8    conversation with an ADA about the case against Mr. Darney

9    being dismissed in the state, but that's been the usual

10   procedure in these types of cases and similar cases.

11             THE COURT:  Thank you.  At this point, Ms. Shroff,

12   would you like to speak to sentencing issues?

13             MS. SHROFF:  Yes, your Honor.  I wanted to address Mr.

14   Kim's recommendation if it is a recommendation that the Court

15   was considering or if the Court was --

16             THE COURT:  You should say whatever you think I need

17   to hear.

18             MS. SHROFF:  Mr. Darney is a smart and capable man.

19   He is actually a cogent thinker.  If he were to put his mind to

20   education or getting a degree or whatever goal he sets, it

21   seems to me, at least from having known him, that he is fully

22   capable of achieving that goal.

23             On the flip side, his life history and his criminal

24   history is such that it indicates he is really unable to

25   achieve those goals.  I tried to figure out what was the

1   obstacle for him.  The obstacle does not seem to be a drug

2   addiction, nor does it seem to be an obstacle that is inertia

3   or laziness.  The obstacle seems to be that because he has a

4   criminal history and doesn't have any support, he keeps going

5   through the cycle over and over again.

6          I recall from one of my earlier conversations and

7   thought processes about this case and other narco lock cases in

8   general that the person tries to do better and finds a job with

9   great amount of difficulty, the job is below your ability

10  level, you are in this job, and then you are not able to keep

11  up with the job because of parole's requirements or some other

12  requirement that requires you to be home by 9:00.  For Mr.

13  Darney, that is the biggest issue of all, not having had a

14  home.

15         One should not be myopic in this regard, either,

16  because that is really not an excuse and it is not proffered as

17  an excuse for the continued conduct.  But in terms of trying to

18  look forward for my client, what we try to do as an office is

19  to get him support while he was in prison, try and get him a

20  working relationship with somebody in our office who is going

21  to be responsible to provide him continued support.

22         There are very many basic things that Mr. Darney needs

23  help with:  Something simple, such as filling out paperwork to

24  get housing or Medicare; the real basics of having to establish

25  life.  He's sort of a person with no infrastructure.  He needs

1   help getting an infrastructure. He needs a home, he needs a

2   job, he needs Medicare, he needs benefits, and he needs help in

3   doing the paperwork that can really get in the way of getting

4   him these benefits.

5          I tried to take a very practical approach to helping

6   Mr. Darney. I submitted the reentry plan for the Court's

7   consideration. And I remind the Court of what I'm sure the

8   Court knows, the 19½ months he has served at the MCC.

9          The most important thing about Mr. Darney to me is he

10   does not seem to catch a break that is accompanied by support.

11   I hope that our office has now been able to put in place that

12   support for him. From here on, if Mr. Darney succeeds, it's

13   because we have analyzed the situation correctly and because

14   Mr. Darney is able to take advantage of the help that he is

15   able to get. If he fails, the Court will have him on

16   supervised release, and only Mr. Darney will be responsible if

17   he comes back here.

18          I sincerely hope that what Mr. Kim has suggested does

19   not carry the day. When somebody goes to prison so many times,

20   it could be for one of two reasons. It could be because he

21   really don't seem to know how to get out of that cycle and

22   don't have the help or they simply don't care. I think Mr.

23   Darney is the former and not the latter. He hasn't had the

24   help.

25          I'm asking you to give him a chance to get the help,

```
 1   get the support.  As I said, if he fails, supervised release is

 2   a big punishment.  If he comes back and violates, that's his

 3   call.  But I want to ask the Court most respectfully to give

 4   him the true chance, not we are going to send you out on the

 5   street as they did in the state court and let you survive on

 6   your own.  I want him to have a real shot.  On behalf of my

 7   client, I ask you to give him that by sentencing him to time

 8   served and allowing the Federal Defenders the opportunity to

 9   work with him.

10           THE COURT:  I have two questions for you.  One, when

11   you talk about Mr. Kim's recommendation, you're talking about

12   the aspect of it that is recommending a custodial sentence that

13   is in the middle of the advisory guideline range?

14           MS. SHROFF:  Yes, your Honor.  Also the reasons that

15   he gives.

16           THE COURT:  Yes.

17           MS. SHROFF:  In the second paragraph he notes that Mr.

18   Darney does not have an established case address, he does not

19   have a viable support network.  He is a high school dropout.

20   Those are precisely the reasons why he should get time served.

21   If you sentence him to 24 month or even 27 months, by that time

22   he will truly not have a support system.  It's going to keep

23   the cycle going.

24           THE COURT:  This was bringing me to the second

25   question.  Have there been any disciplinary incidents in the
```

1   MCC that would suggest that 24 months wouldn't really be 21

2   months?

3           MS. SHROFF:   I'm not aware of any disciplinary actions

4   he's had.

5           THE COURT:   Then he should be entitled to good time?

6           MS. SHROFF:   He should be entitled to good time.   What

7   I'm worried about is that they will move him, and by then our

8   social worker will not be in touch with him.   We want to be

9   able to be the person that takes him from here and literally

10  helps him at every step of the way.   That's the main issue.

11  The issue is to foster the professional relationship that he

12  has developed with the social worker.

13          One of the ideas we had was maybe we could take him to

14  Abraham House for a short time, which is an outreach place for

15  people to stay in the Bronx, on Mott Haven Street.   We have

16  been trying to really come up with something concrete.

17          THE COURT:   Is this Mr. Darney's mother?

18          THE DEFENDANT:   Yes.

19          THE COURT:   Good afternoon, ma'am.   Thank you for

20  coming to court.   Please have a seat.

21          You're afraid that in six weeks the Bureau of Prisons

22  is going to designate him to someplace else?

23          MS. SHROFF:   I don't know if in six weeks they will,

24  but I'm certainly concerned if the Court follows the

25  recommendation of 27 months.   Yes, I am concerned.   I think

1   that a sentence of 19½ months is sufficient given what he's

2   been through.  Again I reiterate that, to say it bluntly, being

3   poor causes problems.  Being poor causes a lot of hardship on

4   people that not everybody deals with correctly.  And not having

5   a support system is just generally unfair and it has been

6   unfair to him.  The system has been sort of unfair to Mr.

7   Darney.

8           If you look at his criminal history, his criminal

9   history is not suggestive of a drug thing.  It's not suggestive

10  of a person who is making a big profit.  It's not even

11  suggestive of a person making a profit.  Mr. Darney seems to

12  fall back on this because he feels some obligation either to

13  support others or to support himself and has had a absolutely

14  no mechanism by which to do it the correct way.

15          I'm really not trying to make any excuse for Mr.

16  Darney.  Mr. Darney has no excuse for some of his conduct.  I

17  understand that.  To be candid with the Court, there are

18  certain places where Mr. Darney needs to, well, be more adult

19  about it.  He has to become more adult about his

20  responsibilities to his son.  He owes himself that and his son

21  that.  That's one of the things that he has to work on.

22          The difficulties he has had in life don't really need

23  to have that effect on a 15-year-old.  He can still be a good

24  parent no matter where he is.  He can still be a good parent no

25  matter how many difficulties he has had.  Getting an apartment,

1    a place to stay, a network, those are the things one can

2    understand why he has had difficulty with, and for that he

3    should get an opportunity.

4              Have I answered the Court's questions?

5              THE COURT:  You answered both my questions, actually.

6              MS. SHROFF:  Thank you.

7              THE COURT:  Thank you.

8              Mr. Mukhi?

9              MR. MUKHI:  Your Honor, the government believes a

10   guideline sentence would be appropriate here.  I don't have

11   anything to add on the 3553(a) factors unless Court has any

12   specific questions.

13             I did want to note, Ms. Shroff made reference to the

14   defendant being in custody for 19½ months.  That includes the

15   time that he was in state custody.

16             THE COURT:  Which is why I opened with the question

17   that I did.

18             MR. MUKHI:  Yes.  I don't believe that he would

19   receive credit for that time from the BOP.

20             THE COURT:  If there is not a state charge on which

21   he's being sentenced that's related to the arrest, then, as I

22   understand it, under the statute the whole time in custody

23   would count.

24             MR. MUKHI:  If that's right, then yes, it would.  I'm

25   not aware of that.

```
 1              THE COURT:  If what part of it is right?
 2              MR. MUKHI:  If that's how the BOP would calculate it
 3    in a circumstance where the state charge has been dropped.
 4    Originally, he was detained on a state charge in the state.
 5              THE COURT:  But you don't know of any conviction on
 6    the state charge.
 7              MR. MUKHI:  Correct.  If I may confer with Ms. Shroff
 8    for a minute?
 9              THE COURT:  Yes.
10              (Counsel conferred.)
11              MS. SHROFF:  Your Honor, I actually think the issue is
12    somewhat more complicated.  If the writ was not satisfied, then
13    technically he's been a state prisoner this whole time up until
14    now.  If the writ was never satisfied, I think he's always been
15    a state prisoner held in federal facility and could get no
16    time.
17              THE COURT:  You say there is no state charge.
18              MS. SHROFF:  That's right.  That's why I asked Mr.
19    Mukhi if there was a writ on which he was brought here.  His
20    primary jurisdiction, because he was on a writ, I'm pretty sure
21    he is still a state court prisoner.
22              THE COURT:  Would that mean he gets transferred back
23    into state custody, which would also be --
24              MS. SHROFF:  I don't think he would get transferred
25    back to the state custody unless the state still has an open
```

D4Grdars

1    warrant or request for him.  But I think that his federal time

2    starts to run from the time you sentence him, as he is a

3    federal prisoner as of today.

4             THE COURT:  3585(b) says, "A defendant shall be given

5    credit toward the service of a term of imprisonment for any

6    time he has spent in official detention prior to the date the

7    sentence commences (1) as a result of the offense for which the

8    sentence was imposed or (2) as the result of any other charge

9    for which the defendant was arrested after the commission of

10   the offense for which the sentence was imposed," then back out

11   to the margin, "that has been credited against another

12   sentence."

13            My understanding of 3585(b) is that unless there is or

14   is going to be some state sentence on a charge that is

15   concurrent in scope and time with the September 2011 arrest,

16   the sentence would count all way back to September 2011.

17            MS. SHROFF:  I just know that if the person is brought

18   here on a state writ, then he is technically still held as a

19   state prisoner even though he is here unless the writ is

20   satisfied, which I'm not sure it was.  If the writ is

21   satisfied, then he ceases to be a state prisoner and he becomes

22   a federal prisoner.  The BOP is actually calculating those

23   dates and giving them to the federal case.

24            THE COURT:  Both of you coming here for sentencing

25   should know something as basic as this.  We shouldn't be

1    standing here wondering about this at sentencing.  I'm very

2    disappointed.

3              Do the marshals have the capability, is there some

4    way, if you called back to your office, to check and see if

5    there is a state detainer or anything in the system?  If I gave

6    him time served now, Ms. Shroff is arguing that I should do

7    that so that Ms. Leice can then take him up to the Bronx.  But

8    if he is going to be sent to Rikers, that's not going to be

9    helpful.

10             THE MARSHAL:  We would have to ask our warrant

11   supervisor to see if he has a warrant or detainer in the

12   system, and that may take a few minutes to do.

13             THE COURT:  I have a few minutes.  This is something I

14   really want to know, if that's possible.  Would it be helpful

15   if I called or my deputy called?  You can certainly say that I

16   made you do it.

17             THE MARSHAL:  No problem.  I'll step out and give him

18   a call.

19             THE COURT:  Thank you.  Do you need the numbers or

20   anything?

21             THE MARSHAL:  I have it.

22             THE COURT:  His case number or anything?  Thank you.

23   I really appreciate it.

24             MR. MUKHI:  Your Honor, I apologize for not

25   anticipating this issue.  I understand the Court's frustration.

1          THE COURT:  Thank you.  Mr. Mukhi, have you completed
2     your remarks?

3          MR. MUKHI:  Yes, your Honor.

4          THE COURT:  Mr. Darney, is there anything that you
5     would like to say on your own behalf?

6          THE DEFENDANT:  Yes, your Honor.  It's been said that
7     they talk about my criminal record and all I did was jail time.
8     But on the other half of it, like she was saying, I need help.
9     I used the time when I was in jail going back and forth to
10    improve myself.  It's like if I was to write a résumé of all
11    the skills I learned all through the time, it would probably be
12    like somebody with no criminal offense.

13         What I'm saying is every time I go back and forth to
14    jail, I try to use the time to better myself, but whenever they
15    let me back out, they never give me the benefit to put it to
16    use.  I got more vocational trades and skill trades and work
17    studies and all that than the average person, but they never
18    give me a chance to use it.

19         I'm not somebody that glorifies the streets or looks
20    at it like I look at Scarface and say I want to emulate Tony
21    Montana.  No.  It's like I said every day, if I had another
22    option, I would have gladly tooken it.  It's not about buying a
23    whole bunch of stuff and putting on an image.  It's about me
24    doing what I need to do.

25         There's a lot of stuff that I regret.  I watched my

1  son being raised through telephone conversations, letters, and

2  pictures.  It's like I'm at the point now, yes, he's 16 right

3  now, and yeah, he is older, and they say this is the time when

4  I need to be there in his life now, because he's 16.  That

5  means that he could get in a situation like this, charged as an

6  adult and all that.

7       I wouldn't want to be sitting here running across him

8  in here wearing the same thing I'm wearing as a cell mate or

9  bunkie.  This is the time he needs me most.  His mom raised him

10  to be, for which I'm very grateful, a very decent person.  He

11  is into other things other than the street.  I'm glad he don't

12  look up to me for that point.

13       I feel like this is the time, not when he was in

14  Pampers and all that, but this is the time where he could look

15  at my experience and say all right, he got experience and stuff

16  that I don't want to do.  It's like society is making it harder

17  and harder for them.  I'm more concerned about him getting in a

18  situation as opposed to me coming back.  I think that would

19  hurt me more than any sentence that would be imposed on me.

20  With all due respect, your Honor.

21       THE COURT:  Thank you, Mr. Darney.

22       MS. SHROFF:  Your Honor, may I have a moment?

23       THE COURT:  Yes.

24       MR. MUKHI:  Your Honor, we have determined that the

25  defendant is here on a writ from state custody.  I think the

```
 1        marshals are still checking the file to see whether there is

 2        still a state detainer that would require him to be transported

 3        to the state even if he were to be sentenced to time served

 4        today.

 5              MS. SHROFF:  There is no detainer.  It's only the

 6        writ.  Your Honor, technically -- the marshal is here so he can

 7        correct me -- there is no detainer.  I specifically checked to

 8        see there was no detainer.  The only issue is whether or not

 9        the writ has been satisfied.  If Mr. Mukhi were to satisfy the

10        writ, there would be no issue.

11              THE COURT:  What does it take to satisfy the writ?

12              MR. MUKHI:  To put it on the record that it has been

13        satisfied because the state case has been dismissed.  Usually,

14        at the conclusion of a case in this jurisdiction, we get an

15        email or some other notification from the marshals asking us

16        whether the writ has been satisfied, and we just respond via

17        email that it has been satisfied, meaning all reason to have

18        the defendant here from state custody has been satisfied.

19              THE COURT:  Whether it is time served or something

20        that would require the service of some additional stub of a

21        sentence, you would be in a position today to provide whatever

22        notification is necessary to the marshals to obviate any

23        possibility of him being sent back to state custody on account

24        of that writ?

25              MR. MUKHI:  Yes.  I'll make that notification after
```

1    the Court imposes sentence today.

2          THE COURT:  Thank you.  Give me a few minutes to

3    reflect.

4          Mr. Marshal, was there any further information?  Ms.

5    Shroff?

6          MS. SHROFF:  Your Honor, the marshal says they does

7    not see any warrant or anything other than Mr. Darney being

8    brought here as a new arrest.  There is nothing in the state

9    that says that they would want him back.

10         Is that correct?

11         THE MARSHAL:  We don't have any documentation from the

12   state saying that they want him back.  But it's up to the AUSA

13   to see if the state charges are actually closed or if it's

14   pending or anything of that nature.  We don't have anything on

15   our system saying that we have to bring him back to where he

16   was picked up.  He came in as a new arrest.

17         THE COURT:  Thank you.  I do thank you so much for

18   having gotten that information.

19         Thank you for your patience.  I adopt the factual

20   recitation that is detailed in the pre-sentence report.  The

21   Court has discretion in exercising its power under section

22   3553(a) to determine the particular sentence to be imposed in

23   each particular case.

24         The Court is required to consider a number of specific

25   and sentencing rules, including consideration of the sentencing

1    guidelines, and the Court is required by the law to impose a

2    sentence that is sufficient but not greater than necessary to

3    comply with the sentencing purposes that are set forth in the

4    statute.

5            I'm going to stop here.  I have one more question for

6    Ms. Shroff and her colleague.  When you talk about putting Mr.

7    Darney in connection with this Abraham House and when you

8    stress a time-served sentence as being crucial to your ability

9    to implement your plan, what is it that you need?  If he is

10   released from MCC this evening, is somebody going to take him

11   up there?  Is he going to spent the night?  Tell me exactly

12   what your plan is.

13           MS. SHROFF:  Your Honor, what we in mind is what we

14   put into the reentry plan.  Initially, we were hopeful that

15   once Mr. Darney is released, if he were released from the court

16   today, we would be able to find him a stable place to stay.  We

17   had to consider several options, because Abraham House is not a

18   place that we can just put somebody in.

19           There has to be a process, the application process.

20   Our initial thinking was we would perhaps have to find him a

21   shelter, but we would do it.  Or his family would be able to

22   step up and say we'll take him until you find him more long-

23   term housing, which we would help him with.

24           I do want to say to the Court that if the Court were

25   to sentence him at the low end of the guideline range and if

1   Mr. Darney were not moved from the MCC, we would have continued

2   contact with him.  I personally believe that that is a

3   sufficient sentence, time served is a sufficient sentence.

4          On the other hand, if the Court were to disagree with

5   me and sentence him to the low end of the guideline range, the

6   concern that he would lose contact with us would not be as

7   great.  The concern would be far greater if he were sentenced

8   to 27 months and moved somewhere.

9          I hope I'm being completely accurate in what I'm

10  telling the Court.

11         THE COURT:  I appreciate your candor, and I will be

12  unusually candid here, too.  It is my belief that the low end

13  of the guideline range is the right place for a sentence here.

14  It also seemed to me that having that period of a few weeks to

15  solidly get transitional arrangements and a new set of

16  appointments and everything else in place and for Mr. Darney to

17  reflect in the context of the reality of what's going to happen

18  on his plans and continue to commit himself and build himself

19  up to carry out those plans, is the right result for reasons

20  relating to many of the purposes of sentencing.

21         I wasn't sure if I heard you, Ms. Shroff, telling me

22  that if it's not today, who knows.  I think it is very

23  important for Mr. Darney to have this opportunity.  I think he

24  is extraordinarily blessed and fortunate to have the support of

25  you folks.  We all care about Mr. Darney.  You are acting on

D4crdar9

1    his behalf in ways practical and legal and encouraging.  His

2    mother is here.  There is a confluence of support here that I

3    don't want to undermine.

4          When I thought I heard you telling me it had to be

5    today or it never would be, I wasn't sure I heard that.  And if

6    I did hear that, I wasn't sure that I understood why that would

7    be.  I'm grateful to you for giving me a candid response.

8          MS. SHROFF:  On behalf of Mr. Darney, as his advocate,

9    I say it again, I believe 19½ months is sufficient and no more

10   time is necessary under 3553(a), as we look at it.

11         I would ask the Court, your Honor, if I may have one

12   minute to consult with his mom.  I ask the Court this because

13   Mr. Darney has not always allowed us to reach out to her.  He

14   has not said that it's OK for us to burden her with his issues.

15   We have tried to actually get him to say that it's OK to ask

16   her for help and it's OK to ask her to bear the responsibility

17   that she shouldn't normally have to bear.

18         She is here.  One thing I would like to ask her about

19   is housing, if I could take a minute to do that.

20         THE COURT:  Certainly.

21         MS. SHROFF:  Thank you.

22         (Pause)

23         MS. SHROFF:  Thank you, your Honor.  Your Honor, I

24   wanted to confirm with Mr. Darney's mother that if he were to

25   be sentenced to time served, she would take him home today so

 1  he would have a place where he would go.  He would not need the

 2  shelter we have identified and he would not need any other

 3  place to go home.

 4          I remain his advocate, but I tell the Court of course

 5  that option would be just the same if it was the low end of the

 6  guideline range sentence.  I don't want the Court to think I'm

 7  misleading the Court in any way.

 8          THE COURT:  As I said before, I appreciate your being

 9  straightforward with me and being clear with me.

10          Mr. Darney, you have a very, very strong and

11  persuasive advocate here.  At the end of the day the decision

12  that is made about the sentence is my decision.  I may not be

13  completely on the same page with Ms. Shroff, but that is not

14  because she is not doing a fantastic job for you, it is because

15  I have to make the decision as a judge.

16          Ms. Shroff, would you continue.

17          MS. SHROFF:  She is the resource that we were loathe

18  to sort of commit to on paper, because we never had a firm

19  commitment.  We have one now.  I have specifically spoken with

20  her.  Of course, Ms. Leice will continue with all the other

21  efforts.  If not her, Ms. Van Nest, who is the social worker

22  supervisor, will continue.  We have great faith that we will be

23  able to give Mr. Darney all that he needs.

24          If I have answered the Court's questions?

25          THE COURT:  You have.

1      MS. SHROFF:  Thank you, your Honor.

2      THE COURT:  Thank you.

3      Now I will continue.  As to the sentencing guidelines,

4   I conclude that the applicable guideline offense level is 10

5   and that the applicable criminal history category is VI, for

6   the reasons that are detailed in the pre-sentence report.

7   Therefore, the advisory guideline range for a custodial

8   sentence is from 24 to 30 months of imprisonment.  I have used

9   the November 2012 version of the guidelines.

10      I have considered very carefully both the question of

11  whether there is an appropriate basis for a departure from the

12  advisory range within the guidelines system, and I have not

13  found a basis for departure.  I have considered also all of the

14  section 3553(a) factors and goals and all of the facts that

15  have been put before me in light of those factors and goals.

16      In particular, I have listened very carefully to and

17  thought carefully about the presentation of the defense

18  concerning the circumstances in which Mr. Darney committed both

19  the original state crimes and ended up going back into crime

20  and, importantly, the system of support that's present now that

21  can make a difference in his future that gives him a different

22  set of opportunities, guidance, and support that he has not had

23  in his repeated encounters with the state criminal and parole

24  system.  Those are relevant to the Court's determinations as to

25  what is necessary to protect the public, to promote respect for

1    the law, and what is important in terms of reflecting Mr.

2    Darney's personal history and characteristics.

3            I will now state the sentence that I intend to impose.

4    Mr. Darney and Ms. Shroff, would you please stand.

5            Mr. Darney, it is the judgment of this Court that you

6    are to serve 24 months of imprisonment followed by 3 years of

7    supervised release.  The standard conditions of supervision 1

8    through 15 as detailed in the sentencing guidelines manual will

9    apply.  You will be subject to the following mandatory

10   conditions.  You must not commit another federal, state, or

11   local crime.  You must not illegally possess a controlled

12   substance.  You must not possess a firearm or destructive

13   device.

14           I will suspend the normal mandatory drug testing

15   condition because I will impose a special condition requiring

16   drug treatment and testing.  You must cooperate in the

17   collection of DNA as directed by the authorities.

18           I will also impose the following special conditions.

19   You must participate in a substance abuse treatment program

20   approved by the probation office.  This program may include

21   testing to determine whether you have reverted to the use of

22   drugs or alcohol.

23           I authorize the release of available drug treatment

24   evaluations and reports to the substance because treatment

25   provider as directed by the probation officer.  You will be

1  required to contribute to the cost of the services rendered in

2  the form of a co-payment in an amount determined by the

3  probation officer based on your ability to pay or the

4  availability of third-party payment.  The probation officer

5  will work with you in light of whatever your circumstances are.

6          You must submit your person, your residence, your

7  place of business, your vehicle, or any other premises under

8  your control to a search on the basis that the probation

9  officer has reasonable belief that a violation of the

10 conditions of release may be found.  Any search must be

11 conducted at a reasonable time and in a reasonable manner.

12 Failing to submit to a search may be grounds for revocation of

13 supervised release.  You must inform any other residents that

14 the premises may be subject to search pursuant to this

15 condition.

16         You must report to the nearest probation office within

17 72 hours of your release from custody, and you will be

18 supervised by your district of residence.

19         I will not impose any fine on you in light of your

20 financial circumstances.  I will order that you pay to the

21 United States the mandatory special assessment of $100 for your

22 one count of conviction, which is payable immediately.  That

23 just means you have to pay it as soon as you are able to pay

24 it.

25         You must inform the probation department of any change

1   in financial circumstances and notify the United States

2   Attorney for this district within 30 days of any change of

3   mailing or residence address that occurs while any part of the

4   special assessment remains unpaid.

5        I will recommend to the Bureau of Prisons that you be

6   credited with time on this sentence from your September 3,

7   2011, arrest for the reasons that we have discussed at length

8   today.  I believe that will be the case anyway, but I will

9   underscore that by putting that in the judgment form.  Also

10  that you remain designated to the MCC for the completion of

11  your sentence.

12       If Ms. Shroff hasn't already talked to you about good

13  time credit, she will explain to you how good time credit

14  should work in this case.

15       I believe that this sentence as a whole is reasonable

16  within the meaning of the law, sufficient, appropriate, and no

17  greater than necessary to satisfy the statutory purposes of

18  sentencing, which include punishment and deterrence.

19       Does either counsel know of any legal reason why the

20  sentence should not be imposed as stated?

21       MR. MUKHI:  No, your Honor.

22       MS. SHROFF:  No, your Honor.

23       THE COURT:  The sentence as stated is imposed.

24       Mr. Darney, you have the right to appeal this sentence

25  to the extent you have not given up your right to appeal from

1    your guilty plea.  If you are unable to pay the cost of appeal,

2    you have the right to apply for leave for appeal in forma

3    pauperis, that is, without paying a fee.  At your request, the

4    clerk of court will file the notice of appeal for you.  Any

5    notice of appeal must be filed within 14 days of the judgment

6    of conviction, so be sure to talk to Ms. Shroff about this

7    today.

8         Mr. Mukhi, are there any remaining counts or

9    underlying indictments that need to be addressed?

10        MR. MUKHI:  Yes, your Honor.  The government moves to

11   dismiss the underlying indictment in this matter.

12        THE COURT:  That motion is granted.  Will you reaffirm

13   your undertaking that you will satisfy the writ today?

14        MR. MUKHI:  Yes, your Honor, I'll do it as soon as I

15   get back to my desk.

16        THE COURT:  Thank you.  I appreciate that.

17        Mr. Darney, I just have a few more words to say.  I

18   thank you in advance for listening.  The crime that you

19   committed was a serious one, and the length of the sentence

20   that you received today reflects that.  I know from your letter

21   that you sent to me and also from your statements and your

22   actions here in court today that you understand that you have

23   ended up making a long series of very poor choices in trying to

24   get on your feet.

25        I also see that you are a smart man.  As I said

D4crdars

1   before, you are very fortunate to be working with a set of

2   dedicated and talented people who honor you as a man, as a

3   fellow human being, and want to help you turn your life around.

4   I urge you to think hard about each choice you make as you go

5   forward.  Think about the potential consequences so that your

6   decisions can be better ones, ones that show yourself, your

7   son, your mother the honor that you deserve and that will be

8   consistent with keeping the opportunities open that are here

9   for you now.  The key to your future is today and will be in

10  your hands.  It will be what you make of it.

11          I urge you to decide now, if you haven't already done

12  this, not to do ever again anything that could even put you at

13  risk of going to prison.  That is not an easy promise to make

14  to yourself, and it is an even harder promise to keep, but it

15  is the best possible gift that you can give to yourself.

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  And you are the most important person to

18  keep that promise to.

19          I want to commend you for the steps that you have

20  taken in your times of custody to acquire skills.  I want to

21  commend you for getting your GED.  I do encourage you to get

22  every kind of further training that you can and to keep

23  yourself out of prison so that you can put that training to

24  work.  You will now have the support and encouragement that

25  will help you with that.

D4crdars

1        I'm glad your mother is here today.  I know that she

2   loves you.  She sent me a letter and she is here.  And I know

3   that you have been uncomfortable about sharing your troubles

4   with her.  But let her be your partner in learning how to

5   navigate your life, which is a very challenging life.  She has

6   also had a challenging life, and she has been navigating that

7   successfully.  Let her help with you with that.

8            THE DEFENDANT:  Yes, your Honor.

9            THE COURT:  You talked about being able to be there at

10  a crucial time for your son.  Make sure that you always also

11  have in mind to be the kind of father of whom your son can

12  always be proud.  Be honest with him about what the bad paths

13  are.  Be there for him when he is making those decisions and

14  help him to make those good decisions.

15       I wish you and your family continued strength.  You

16  will have the combined guidance and support of the probation

17  department as well as the help of Ms. Leice and her colleagues

18  at the Federal Defenders and the agencies that they will help

19  you connect with as you reestablish your day-to-day life.  Do

20  take advantage of these resources.

21       You're working with a bunch of folks, including the

22  people in probation, who really are committed to helping you

23  succeed.  They really care about you succeeding.  It is not

24  easy to live under supervision, but take it in that spirit,

25  that it is building blocks to your life and it's a life that

D4crdars1

1    can be a really good life.

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  I have to caution you that you have to

4    comply strictly with all the terms that I set for your

5    supervised release.  If you are brought back before me, I will

6    most likely send you back to prison.  Please don't ever put me

7    in a position of having to make that choice.

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Again, I thank you for listening.  I know

10   that you can succeed.  I want to thank Ms. Shroff and Ms. Leice

11   and their colleagues for the work that they are doing with you

12   and Ms. Shroff for her advocacy here in court.  I also thank

13   Mr. Mukhi, and I thank the marshals for the work that they have

14   done in enabling me to reach a decision here.

15          I will direct that a copy of the pre-sentence report

16   be prepared for the Bureau of Prisons and the sentencing

17   commission.  All other copies of the report must remain

18   appropriately confidential.  If an appeal is taken, counsel on

19   appeal are to be permitted access to the report.

20          Is there anything further that we should discuss

21   together this afternoon?

22          MR. MUKHI:  Nothing from the government, your Honor.

23          MS. SHROFF:  No, your Honor.

24          THE COURT:  Thank you all.  The gentleman from the

25   marshals, I ask that you let Mr. Darney acknowledge his mother

D4orders

1    as he leaves the courtroom and also have a little time to speak

2    with Ms. Shroff about the appeal issue.

3              THE MARSHAL:  No problem.

4              THE COURT:  Thank you all.  Keep well, everyone.

5              (Adjourned)

# *Exhibit  B*

Federal Bureau of Prisons

age 1 of 1

Home  Site Map  Contact Us

**Federal Bureau of Prisons**
An agency of the U.S. Department of Justice

Search [          ]  Website ▼  Go

About | Inmate Locator | Prison Facilities | Careers | Inmate Matters | Policy/Forms | Doing Business | News/Information

**Inmate Locator**

⊳ About the Inmate Locator

⊳ Visiting - General Info
  - Visiting Hours
  - Who Can Visit?
  - Background Checks
  - Business Visits
  - Special Circumstances
  - Visiting Room Procedures
  - Conjugal Visits

⊳ Locate Inmates Released Before 1982

⊳ Who is a "Federal" Inmate?

Related Documents

## Inmate Locator - Locate Federal inmates from 1982 to present

| Name | Register # | Age-Race-Sex | Release Date<br>Actual or Projected | Location |
|------|-----------|--------------|-------------|----------|
| 1. CHARLES DARNEY | 66017-054 | 35-Black-M | 02-06-2014 | NEW YORK MCC |

### Results 1 - 1 of 1

New Search     FAQs     Privacy

About | Inmate Locator | Prison Facilities | Careers | Inmate Matters | Policy/Forms | Doing Business | News/Information

Accessibility | Browser Requirements | Disclaimer | DOJ Legal Policies | FOIA | No FEAR Act | Privacy Policy

http://www.bop.gov/iloc2/InmateFinderServlet?Transaction=NameSearch&needingMore...    10/23/2013